**FILED**

Aug 30 2017, 5:49 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court



| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEE |
|---|---|
| Kevin C. Tankersley | T. Andrew Perkins |
| Winamac, Indiana | Peterson Waggoner & Perkins, LLP |
| | Rochester, Indiana |

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In re Adoption of D.M. | August 30, 2017 |
| Michael Mendez, | Court of Appeals Case No. 09A02-1612-AD-2844 |
| *Appellant*, | |
| | Appeal from the Cass Circuit Court |
| v. | |
| | The Honorable Leo T. Burns, Judge |
| Brent L. Weaver, | |
| *Appellee*. | Trial Court Cause No. 09C01-1604-AD-6 |

**Brown, Judge.**

[1] Michael Mendez ("Mendez"), the natural father of D.M., appeals from the trial court's decree of adoption. Mendez raises one issue which we revise and restate as whether the court erred in finding that his consent to the adoption was not required. We affirm.

## *Facts and Procedural History*

[2] D.M. was born to Mendez and Leilani Mendez ("Leilani") in June 2010. For nearly the first two years of D.M.'s life, Mendez lived with Leilani and D.M. and was a stay-at-home father. C.L., Leilani's child from a previous relationship, also lived part-time with Mendez and Leilani. In May 2012, Mendez was arrested for molesting C.L. and later pled guilty to child molesting as a class C felony.[1] He was sentenced to sixteen years with eight years suspended, and a 2012 no contact order provided that he have no contact with Leilani, C.L., or D.M.[2] A decree of dissolution was issued in October 2012 dissolving the marriage of Mendez and Leilani.[3] Mendez was released from the Department of Correction (the "DOC") to Cass County Community

---

[1] At the August 22, 2016 hearing, Leilani testified that, as of the date of the hearing, C.L. was twelve years old and D.M. was six years old.

[2] Mendez's 2012 no contact order provided that, as a condition of probation, Mendez was ordered to have no contact with Leilani, C.L., or D.M. and, under paragraph 16, stated: "You shall have no contact with your victim or victim's family unless approved in advance by your probation officer and treatment provider for the benefit of the victim." Respondent's Exhibit A.

[3] Paragraph 6 of the dissolution decree provided "no child support is ordered to be paid by [Mendez] at this time due to the fact that he is currently incarcerated and has no source of income." Respondent's Exhibit B. Paragraph 7 provided "[Mendez] is not requesting parenting time currently, and his parenting time is hereby suspended based on a finding that a no contact order has been entered . . . prohibiting [Mendez] from any contact with [D.M.]" and "[Mendez] shall appear before this Court to request parenting time with the minor child upon his release from incarceration, and the Court will schedule a hearing upon a written motion." *Id.*

Corrections on August 18, 2015, obtained a job in September 2015, and was released from the community corrections facility on November 9, 2015. Meanwhile, Leilani began dating Brent Weaver in the fall of 2012, they moved in together in the spring of 2013, and they were married on March 5, 2016.

[3] On March 31, 2016, Weaver filed a Petition for Step-Father's Adoption of Minor requesting to adopt D.M. On May 23, 2016, Mendez filed a motion to contest the adoption. On August 22, 2016, the trial court held a hearing at which it heard testimony from Leilani, Weaver, and Mendez and admitted into evidence the July 2015 no contact order and the October 2012 decree of dissolution. Leilani testified that C.L. lived with her and Mendez part-time, and when asked "when the molestation happened, was [D.M.] on the premises at all," Leilani responded affirmatively. Transcript at 6. When asked "[w]as [D.M.] in the same room when it happened," Leilani stated "[s]he was." *Id.* When asked "when this happened," Leilani replied "[s]he was 7 she was almost 8." *Id.* Leilani testified that the last time Mendez saw D.M. was May of 2012, that Mendez had not made contact with her through an attorney to reestablish any contact with D.M., and that Mendez has not provided any financial support. She testified:

> [D.M.] has no recollection of [Mendez] in her life. She was not quite 2 when he was arrested . . . she's 6 now, she's happy, she's healthy, she's very well rounded and I think that if [Mendez] were to come back into her life it would be very disruptive, to be honest, I don't trust him. I don't think it would be healthy, and [C.L.] is 12 years old. She just started 7th grade, she is in cheer and volleyball and she' [sic] active and she's not going to

counseling anymore and she's not afraid to go to sleep in her own bed anymore and she's living a normal teenage life . . . .

*Id.* at 11-12. When asked "[s]o, she was in counseling or sometime," Leilani replied "[y]es, absolutely, and when asked if C.L. had memories of what happened, Leilani testified "[a]bsolutely. And she the little mom, she's just like me and she's so protective of [D.M.] and if she knows that [D.M.] has to see [Mendez], it's going to put her in a tail-spin." *Id.* at 12. She testified Weaver had been a father figure for D.M. When asked "what would you think the affect would be on [D.M.] if she were told or have someone else replace her current father figure in her life," Leilani testified "I think it would turn her world upside down and my kids have had that happen already once." *Id.* at 13.

[4] On cross-examination, when asked if Mendez "admitted what he did to [C.L.]," Leilani replied "[a]nd [G.], yes." *Id.* at 15. When asked "[s]o, the facts at least in the criminal case was that he admitted to those 2, to molestation on [C.L.] and the other girl that was there that was a family friend or . . . ," Leilani replied "[c]orrect." *Id.* at 15. When asked if Mendez attempted to contact her and D.M. when he was in jail awaiting trial, Leilani testified "he called his parents, his parents were down and he tried to talk to them through them, talk to her through the parents, but no, that was the only time," and she indicated that she reported Mendez to the prosecutor. *Id.* at 19. She also indicated that Mendez never bonded out after he went to jail and was incarcerated from 2012 to 2015. Weaver testified he functioned and served as the father figure for

D.M. for the previous four years and provided for D.M. financially and emotionally.

[5] Mendez testified that he was "basically a stay at home dad" and raised D.M. prior to May 2012. *Id.* at 33. He testified he took a substance abuse class and received a six-month time cut, and that his understanding was he would have the opportunity to petition the court to see D.M. after he completed counseling and his probation officer approved it. When asked if he was afforded any counseling for sexual offenders while incarcerated, he replied that he completed a three-month sex offender monitoring and management program ("INSOMM") while in the DOC. He indicated that, since his release, he made contact with probation, his probation officer set him up with a counselor, and he was currently seeing the counselor and had been doing so since his release in November. When asked how long he "expects the treatment to go," he answered "[f]rom my understanding, it could last as long as my entire probation." *Id.* at 42. When asked if he was prepared to petition the court to modify support, Mendez replied affirmatively, and stated he wished to have an opportunity to have a relationship with D.M. in the future and was prepared to pay for any counseling that might be required to overcome over any hurdles.

[6] On cross-examination, Mendez indicated he was required to participate in the INSOMM as a part of his sentence and it was not voluntary, he was initially charged with class A felonies, he had been working since September 2015, and he had not filed a petition with the court regarding the no contact issue or financial support. He indicated he had been able to financially support his

daughter since September 2015 when he became employed. Mendez stated that, according to his terms, he must obtain approval of his probation officer prior to contacting his daughter and that he did not have that approval. When asked "you have not successfully completed a court approved sex offender treatment program . . . [o]ther than your [INSOMM]," he answered "[i]t is not completed, no," and when asked "[w]as [INSOMM] supposed to count for this," he replied "[n]o." *Id.* at 48. Mendez also acknowledged he had a conviction for battery prior to D.M.'s birth.

[7]     On October 14, 2016, the court entered an Amended Decree of Adoption granting Weaver's petition to adopt D.M.[4] In its decree, the court found in part that, as a result of a no contact order that was entered in the criminal proceeding and the suspended parenting time order in the dissolution decree, Mendez has had no contact with D.M. since the time of his arrest, that from his employment through the work release center in August 2015 through the hearing in August 2016 he has made no effort to pay support for D.M. in any manner, and that it recognizes that Mendez's ability to contact D.M. directly is prohibited by the no contact order. The court also found that the dissolution decree provided that Mendez was required to request parenting time with D.M. upon his release from incarceration and there is no evidence he has done so, that D.M. has no recollection of her relationship with Mendez, and that

---

[4] Entries in the chronological case summary indicate the court entered a "Decree of Adoption" and then an "Amended Decree of Adoption," the entries state both orders were signed on October 14, 2016, and Mendez's brief states that the amended decree was issued to correct a spelling error.

Weaver began living with Leilani, D.M., and C.L in 2013 and married Leilani in 2016. The decree concludes:

21. Insofar as Michael Mendez is the natural parent of the child to be adopted, the findings and legal conclusions of this Court are controlled by Ind. Code 31-19-9-8[(a)]11(A) and (B).

22. The consent of Michael Mendez to this petition for adoption is not required because there is clear and convincing evidence that he is unfit to be a parent due to the fact that his conviction of child molesting, a Class C Felony, against the child's sibling, while not a disqualifying conviction because the conviction was not for a Class A or Class B felony, renders him unfit because the crime was committed in the child's home, the parent, Michael Mendez, was in a position of trust with respect to the child [D.M.] and her victim sibling at a time when Michael Mendez had a parental and moral duty to provide care, nurture and protection to both the child, [D.M.], and her sibling.

23. The best interest of the child will be served by this Court's finding that her natural father's consent is not required because, as previously stated, [D.M.] has no recollection of her natural father, the child is happy and well-rounded and has a sibling relationship with her 12 year old sister, [C.L.], and has a long-standing three year relationship with [Weaver].

Appellant's Appendix Volume 2 at 7. Mendez filed a motion to correct error, which the court denied.

## *Discussion*

The issue is whether the trial court erred in finding that Mendez's consent to the adoption of D.M. by Weaver was not required. When reviewing the trial court's ruling in an adoption proceeding, we will not disturb that ruling unless

the evidence leads to but one conclusion, and the trial court reached the opposite conclusion. *In re Adoption of K.S.*, 980 N.E.2d 385, 387 (Ind. Ct. App. 2012) (citing *In re Adoption of M.A.S.*, 815 N.E.2d 216, 218 (Ind. Ct. App. 2004)). We will not reweigh the evidence, but instead will examine the evidence most favorable to the trial court's decision together with reasonable inferences drawn therefrom, to determine whether sufficient evidence exists to sustain the decision. *Id.* The decision of the trial court is presumed to be correct, and it is the appellant's burden to overcome that presumption. *Id.* Recognizing the fundamental importance of the parent-child relationship, our courts have strictly construed the statute to preserve that relationship. *Id.* However, even the status of natural parent, though a material consideration, is not one which will void all others, and under carefully enumerated circumstances, the statute allows the trial court to dispense with parental consent and allow adoption of the child. *Id.*

[9]     Ind. Code § 31-19-11-1 provides that the trial court "shall grant the petition for adoption and enter an adoption decree" if the trial court hears evidence and finds, in part, that "the adoption requested is in the best interest of the child" and "proper consent, if consent is necessary, to the adoption has been given." Ind. Code § 31-19-9-8 provides:

> (a) Consent to adoption, which may be required under section 1 of this chapter, is not required from any of the following:
>
> * * * * *
>
> (11) A parent if:

(A) a petitioner for adoption proves by clear and convincing evidence that the parent is unfit to be a parent; and

(B) the best interests of the child sought to be adopted would be served if the court dispensed with the parent's consent.

The party bearing the burden of proof in a proceeding under this chapter must prove the party's case by clear and convincing evidence, Ind. Code § 31-19-10-0.5, and if a petition alleges a parent's consent to adoption is unnecessary under Ind. Code § 31-19-9-8(a)(11) and the parent files a motion to contest the adoption, the petitioner has the burden of proving that the requirements of Ind. Code § 31-19-9-8(a)(11) are satisfied and that the best interests of the child are served if the court dispenses with the parent's consent to adoption. Ind. Code § 31-19-10-1.2. The provisions of Ind. Code § 31-19-9-8 are written in the disjunctive and thus each provide independent grounds for dispensing with parental consent. *In re Adoption of K.S.*, 980 N.E.2d at 388. Regardless of which provision is relied upon, adoption is granted only if it is in the best interests of the child. *Id.* (citing Ind. Code § 31-19-11-1(a)).

[10] While the term "unfit" as used in Ind. Code § 31-19-9-8(a)(11) is not statutorily defined, this court has defined "unfit" as "[u]nsuitable; not adapted or qualified for a particular use or service" or "[m]orally unqualified; incompetent." *In re Adoption of M.L.*, 973 N.E.2d 1216, 1223 (Ind. Ct. App. 2012) (quoting BLACK'S LAW DICTIONARY 1564 (8th ed. 2004)). We have also noted that statutes concerning the termination of parental rights and adoption "strike a similar

balance between the parent's rights and the child's best interests" and thus termination cases provide useful guidance in determining whether a parent is unfit. *Id.* Termination cases have considered factors such as a parent's substance abuse, mental health, willingness to follow recommended treatment, lack of insight, instability in housing and employment, and ability to care for a child's special needs. *Id.* Also, this Court has consistently held in the termination context that it need not wait until children are irreversibly harmed such that their physical, mental, and social development are permanently impaired before terminating the parent-child relationship. *See In re A.P.*, 981 N.E.2d 75, 83 (Ind. Ct. App. 2012). It is well-settled that individuals who pursue criminal activity run the risk of being denied the opportunity to develop positive and meaningful relationships with their children. *In re Adoption of H.N.P.G.*, 878 N.E.2d 900, 907 (Ind. Ct. App. 2008), *trans. denied*, *cert. denied*, 129 S. Ct. 619 (2008). Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Ind. Evidence Rule 401. A parent's criminal history is relevant to whether the parent is unfit to be a parent under Ind. Code § 31-19-9-8(a)(11). *See In re T.W.*, 859 N.E.2d 1215, 1218-1219 (Ind. Ct. App. 2006) (discussing evidence of the father's criminal history in reviewing the trial court's finding of parental unfitness).

[11] Mendez argues that the trial court specifically relied on his conviction for child molesting as a class C felony, cites to Ind. Code § 31-19-9-10,[5] and argues that the statute "considers the very factors relied upon by the court to dispense with [his] consent, but the statute still requires a conviction for a Class A or B felony molestation," "[t]he legislature would have provided that a class C felony can be considered an automatic waiver of consent if the victim was a half-blood sibling if it intended to authorize the courts to rely on this fact situation," and that "reliance on this statute also fails because the statute requires that [he be] incarcerated at the time of the filing of the petition for adoption." Appellant's Brief at 16. He further argues he has taken responsibility for his crime by pleading guilty, served his sentence and was released six months early, completed substance abuse treatment and the State's sex offender management and monitoring program while in custody, has been doing follow-up treatment with his therapist, and is compliant with probation in every aspect.

---

[5] Ind. Code § 31-19-9-10 provides in part:

A court shall determine that consent to adoption is not required from a parent if:

> (1) the parent is convicted of and incarcerated at the time of the filing of a petition for adoption for:

> > \* \* \* \* \*

> > (F) child molesting . . . as a: . . . Class A or Class B felony, for a crime committed before July 1, 2014;

> > \* \* \* \* \*

> (2) the child or the child's sibling, half-blood sibling, or step-sibling of the parent's current marriage is the victim of the offense; and

> (3) after notice to the parent and a hearing, the court determines that dispensing with the parent's consent to adoption is in the child's best interests.

[12]     Weaver maintains the evidence supports the court's finding Mendez is unfit and points to the facts that Mendez committed child molesting against D.M.'s half-sister C.L. at a time when he was living with D.M. and Leilani, C.L. had to go through counseling, Mendez also molested another girl who was a family friend who was staying at their home, and the molestation of C.L. occurred while D.M. was in the same room. He argues that, besides the molestation, Mendez did not petition the court for visitation upon his release from incarceration despite being authorized to do so in the dissolution decree, made no attempt to provide financial support for D.M. even though he was employed and was able to offer financial support since September 2015, violated the no contact order, and admitted to a previous unrelated battery conviction. Weaver further contends the evidence supports the court's bests interests determination, D.M. simply does not know Mendez, a visitation arrangement with Mendez would "'turn [D.M.'s] world upside down,'" and Weaver's involvement as a father figure in D.M.'s life has been consistent. Appellee's Brief at 9-10 (citing Transcript at 13).

[13]     To the extent Mendez challenges the trial court's consideration of his class C felony child molesting conviction in determining that he is unfit to be a parent under Ind. Code § 31-19-9-8(a)(11), the primary goal in interpreting a statute is to fulfill the legislature's intent and, if that language is clear and unambiguous, we simply apply its plain and ordinary meaning, heeding both what it does say and what it does not say. *State v. Brown*, 70 N.E.3d 331, 334 (Ind. 2017) (citing *State v. Dugan*, 793 N.E.2d 1034, 1036 (Ind. 2003)). We presume the legislature

intended logical application of the language used in the statute so as to avoid unjust or absurd results. *Cook v. Atlanta, Ind. Town Council*, 956 N.E.2d 1176, 1178 (Ind. Ct. App. 2011), *reh'g denied*, *trans. denied*. Ind. Code § 31-19-9-8(a)(11) does not expressly prohibit the trial court from considering a parent's criminal history, including a conviction for child molesting as a class C felony, in determining whether the parent is unfit to be a parent. Further, although Ind. Code § 31-19-9-10 provides that consent to adoption is not required from a parent who is convicted of child molesting as a class A or B felony under certain circumstances, the statute does not provide that a parent's conviction for child molesting as a class C felony—or for that matter the parent's conviction for another crime or another offense—may not be considered by the trial court in determining whether the parent is unfit to be a parent under Ind. Code § 31-19-9-8(a)(11). The plain and ordinary meaning of the statutory language does not preclude a trial court from considering the circumstances of a parent's criminal activity in determining whether the parent is unfit to be a parent.

[14]  The trial court found that Mendez is unfit to be a parent under Ind. Code § 31-19-9-8(a)(11) due to the fact his crime of child molesting as a class C felony was committed in D.M.'s home and that Mendez was in a position of trust with respect to D.M. and C.L. at a time when he had a parental and moral duty to provide care, nurture, and protection to D.M. and C.L. The court also found that Mendez has made no effort to pay support for D.M. in any manner or that he has pursued parenting time. Evidence was presented which supports the trial court's findings. Mendez's sexual misconduct and convictions are relevant

to whether he is unfit to be a parent under the statute. Additionally, Mendez did not pay child support for D.M. although he was employed beginning in September 2015 and acknowledged that he was able to offer financial support. *See In re Adoption of M.A.S.*, 815 N.E.2d at 220 (noting Indiana law imposes a duty upon a parent to support his children and that this duty exists apart from any court order or statute). Following his release, Mendez did not file a petition for visitation although directed to do so by the dissolution decree. *See* Respondent's Exhibit B (decree of dissolution states Mendez "shall appear before this Court to request parenting time with the minor child upon his release from incarceration").

[15] The trial court also found that the best interests of D.M. are served by its finding that Mendez's consent is not required and noted evidence that D.M. has no recollection of Mendez, is happy and well-rounded, has a sibling relationship with her twelve-year-old sister C.L., and has a long-standing three-year relationship with Weaver. The evidence presented at the hearing supports these findings as well.

[16] The evidence most favorable to the trial court's decision supports its conclusion that Mendez's consent to the adoption is not required pursuant to Ind. Code § 31-19-9-8(a)(11). Based upon the record, we cannot say that the evidence leads to but one conclusion and the trial court reached an opposite conclusion.

## Conclusion

[17] For the foregoing reasons, we affirm the trial court's decree of adoption.

[18] Affirmed.

May, J., and Pyle, J., concur.