## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 07 2019, 9:01 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

David W. Stone IV
Anderson, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN RE THE ADOPTION OF A.G. & Ju.G. | March 7, 2019 |
| A.R., | Court of Appeals Case No. 18A-AD-267 |
| *Appellant-Respondent,* | Appeal from the Madison Circuit Court |
| v. | The Honorable Angela Warner Sims, Special Judge |
| M.G. & Je.G, | Trial Court Cause No. 48C01-1407-AD-34 |
| *Appellees-Petitioners* | |

**Altice, Judge.**

## Case Summary

[1]  A.R. (Mother) appeals from the trial court's grant of the petition of M.G. (Stepmother) and Je.G. (Father) for the adoption of Mother's two sons by Stepmother. Mother contends that the trial court erroneously determined that her consent for the adoption was not required.

[2]  We affirm.

## Facts & Procedural History

[3]  Mother and Father have two children together (the Children). A.G. was born in January 2000, and Ju.G. was born in January 2004. Mother and Father's relationship ended in 2005. Although the Children were initially in Mother's custody, Father was granted custody in April 2007 pursuant to a court order in a paternity action. Mother was ordered to pay child support and was granted parenting time. Mother has paid no support for the Children since 2011 and last saw them in 2013.

[4]  Mother has a long history of substance abuse. By her own admission, she has struggled with addictions to alcohol, crack cocaine, opiates, and heroin. Relevant to this case, Mother admitted that she began abusing opiates following a surgery in 2005 and then moved to heroin in 2013. She has also used methamphetamine. Mother testified that she last used methamphetamine in December 2015 and heroin in February 2016.

[5]     As a result of her substance abuse, Mother has accumulated a substantial criminal history. She has been incarcerated at least three times since 2008. In August 2008, Mother was charged under two separate cause numbers in Madison County – 48D01-0808-FC-220 (FC-220) and 48D01-0808-FC-213 (FC-213). She entered into a plea agreement to resolve both causes in February 2009, pleading guilty to Class C felony forgery and two counts of Class D felony receiving stolen property in FC-220 and Class C felony forgery in FC-213. She was sentenced in March 2009 to an aggregate sentence of seven years in prison, with two years executed and five years suspended to probation. She was released to probation in March 2010. In early 2012, Mother violated probation by testing positive for cocaine, opiates, and methadone, but the court continued Mother on probation without modification. In September 2013, Mother was again found in violation of probation following a positive drug screen. This time, the court revoked her previously suspended sentence and ordered her to serve two years in prison. The remaining three years were ordered conditionally stayed. Thus, Mother was incarcerated from September 2013 to September 2014.

[6]     Within the first year of her stayed sentence, Mother committed theft, and the probation department filed a violation. She failed to appear at the evidentiary hearing for her violation. The court issued a warrant for her arrest, which was served on December 3, 2015. She was released on bond on January 1, 2016, after which she continued using heroin. At a hearing on February 16, 2016, the

three-year stay in FC-220 was lifted, and Mother was ordered to serve the remainder of her sentence in prison.

[7] On December 2, 2015, Mother committed several additional offenses. She was driving with an adult passenger and her passenger's infant late in the evening when she was pulled over for a traffic stop. Mother provided the officer with a false name and then fled from the scene in her vehicle. After a vehicle pursuit, she jumped out of the moving vehicle and ran through a yard before being apprehended by a K-9. Mother had syringes containing heroin on her person and in her purse, as well as drug paraphernalia in her vehicle. On April 12, 2016, Mother pled guilty to Level 6 felony resisting law enforcement, Class C misdemeanor reckless driving, Class A misdemeanor false informing, and Class C misdemeanor operating a vehicle with a schedule I or II controlled substance in her body. In May 2016, Mother received an aggregate sentence of eighteen months executed to be served consecutively to the remainder of her executed sentence under FC-220.

[8] While Mother was in and out of prison and using drugs, the Children were being raised and cared for by Father and Stepmother.[1] Stepmother has been in their lives since September 2005, and she married Father in July 2007. The

---

[1] Mother exercised parenting time at certain points when not incarcerated between 2010 and 2013 and had the Children in her care for an extended time in 2011 when she seemed to be doing well. She relapsed, however, shortly thereafter. On one occasion in 2013, Mother came to the family's home to visit with the Children and was obviously under the influence, dozing in and out of consciousness as she sat in the driver's seat of her car. She was not allowed contact with the Children at that time and has not been permitted parenting time since her later incarceration beginning in 2013.

Children have a strong bond with Stepmother and call her "Mom." A.G. explained, "she's been there since I was five (5), six (6) years old" and has "done everything for me." *Transcript* at 57. Ju.G. testified that he had no bond with Mother and that Stepmother had "been a good mother all my life." *Id*. at 72. Both of the Children wished to be adopted by Stepmother.

[9] On July 16, 2014, Father and Stepmother filed a petition for adoption, pursuant to which Stepmother sought to adopt the Children. Father and A.G. (who was fourteen years old at the time) consented to the stepparent adoption. The petition alleged that Mother's consent was not required due to her parental unfitness and her lack of contact with and support of the Children. Mother contested the adoption.

[10] Following a contested hearing in December 2015, the trial court granted the adoption petition. Mother appealed. On appeal, this court addressed only one of the five issues raised by Mother and concluded that the trial court abused its discretion by granting the public defender's motion to withdraw filed shortly before the hearing and resulting in Mother representing herself. *See In re Adoption of A.G.*, 64 N.E.3d 1246 (Ind. Ct. App. 2016) (reversing and remanding for a new adoption hearing).

[11] The adoption hearing following remand was held on August 17, 2017, with Mother represented by appointed counsel. Mother remained incarcerated at the time with an expected release date of December 29, 2017. She had been incarcerated since February 2016. At the adoption hearing, both of the

Children – then ages seventeen and thirteen – testified regarding their desire to be adopted by Stepmother and their belief that the adoption was in their best interests. Neither of the Children wanted any further contact with Mother. A.G. testified regarding alarming past visits with Mother and opined that he would not feel safe and secure in her presence. A.G. testified, "I don't like her. She's never been really there for me." *Transcript* at 65.

[12] On December 22, 2017, the trial court issued its decree of adoption. Specifically, the court found that Mother's consent was not required and that adoption by Stepmother was in the Children's best interests. Mother appeals from the trial court's granting of the adoption petition. Additional information will be provided below as needed.

## Discussion & Decision

[13] When reviewing a trial court's ruling in an adoption proceeding, we may not disturb that ruling unless the evidence leads to but one conclusion and the trial court reached an opposite conclusion. *In re Adoption of T.L.*, 4 N.E.3d 658, 662 (Ind. 2014). We presume the decision is correct and consider the evidence in the light most favorable to that decision. *Id.*

[14] The overarching question before us is whether Mother's consent was required in order to grant Stepmother's adoption petition. Under certain limited circumstances, a biological parent's consent to an adoption is not required. *See* Ind. Code § 31-19-9-8. In this case, the trial court relied upon three of the

enumerated circumstances listed in the statute, which provide that consent is not required from any of the following:

> (2) A parent of a child in the custody of another person if for a period of at least one (1) year the parent:
>
>> (A) fails without justifiable cause to communicate significantly with the child when able to do so; or
>>
>> (B) knowingly fails to provide for the care and support of the child when able to do so as required by law or judicial decree.
>
> ****
>
> (11) A parent if:
>
>> (A) a petitioner for adoption proves by clear and convincing evidence that the parent is unfit to be a parent; and
>>
>> (B) the best interests of the child sought to be adopted would be served if the court dispensed with the parent's consent.

I.C. § 31-19-9-8(a). Mother challenges the trial court's determination with respect to each provision. Because the statute is written in the disjunctive, the existence of any one of the circumstances provides sufficient ground to dispense with consent. *In re Adoption of O.R.*, 16 N.E.3d 965, 973 (Ind. 2014). Accordingly, we need only conclude that the trial court properly relied on at least one of these statutory provisions.

[15] With respect to I.C. § 31-19-9-8(a)(11)(A), the trial court found Mother unfit to parent the Children due to "her pattern of criminal behavior, convictions and

her significant pattern of drug and alcohol abuse." *Appellant's Appendix* at 19. We agree with the trial court.

[16] In determining the meaning of "unfit" as used in the statute, we have looked to Black's Law Dictionary's definition of the word. *In re Adoption of M.L.*, 973 N.E.2d 1216, 1223 (Ind. Ct. App. 2012) ("'[u]nsuitable; not adapted or qualified for a particular use or service" or "[m]orally unqualified; incompetent'") (quoting BLACK'S LAW DICTIONARY 1564 (8th ed. 2004)). Additionally, we have found that cases involving the termination of parental rights pursuant to a petition filed by the Department of Child Services provide useful guidance in determining whether a parent is unfit. *See In re Adoption of D.M.*, 82 N.E.3d 354, 358-59 (Ind. Ct. App. 2017); *In re Adoption of M.L.*, 973 N.E.2d at 1223.

> Termination cases have considered factors such as a parent's substance abuse, mental health, willingness to follow recommended treatment, lack of insight, instability in housing and employment, and ability to care for a child's special needs. Also, this Court has consistently held in the termination context that it need not wait until children are irreversibly harmed such that their physical, mental, and social development are permanently impaired before terminating the parent-child relationship. It is well-settled that individuals who pursue criminal activity run the risk of being denied the opportunity to develop positive and meaningful relationships with their children. … A parent's criminal history is relevant to whether the parent is unfit to be a parent under Ind. Code § 31-19-9-8(a)(11).

*In re Adoption of D.M.*, 82 N.E.3d at 359 (citations omitted).

[17] The record clearly and convincingly establishes that Mother is unfit to parent the Children. Her substance-abuse issues span nearly twenty years and have escalated over the years, especially after the birth of her children. Between 2009 and the adoption hearing in August 2017, Mother had been incarcerated on three separate occasions for a year or more, and she was still completing her longest stint of incarceration at the time of the final hearing. Mother was incarcerated when the adoption petition was filed in July 2014. Despite the pending adoption proceedings, upon her release from prison in September 2014, Mother continued to use illegal drugs (including methamphetamine and heroin), violate probation, and commit new criminal offenses.[2] She has not functioned as a parent to the Children for many years, and she remained unable to parent them at the time of the adoption hearing. This and other evidence in the record support the trial court's determination by clear and convincing evidence that Mother is unfit to be a parent.

[18] With regard to whether it was in the Children's best interests to dispense with her consent, Mother simply asserts:

> It was … in the best interest of the children to have both a step-mother and a mother. The step-mother can continue to do the things for the children she has been doing. The mother will have

---

[2] Contrary to Mother's assertion on appeal, her criminal record is far from minor. And it is of no moment that she has never been charged with neglect of the Children. A.G.'s testimony detailed several concerning incidents he experienced while in Mother's care, including a friend passing her needles in front of A.G., Mother begging for money from strangers, and Mother leaving them unattended in a car at night while she visited friends. At the adoption hearing, A.G. testified that he wanted no further contact with Mother and that he would not feel safe and secure in her presence.

> a chance to improve herself and resume a relationship with her
> sons without interference by the father.

*Appellant's Brief* at 20-21. On the contrary, Mother has had ample time to improve herself, address her serious substance abuse issues, and refrain from committing new crimes. Mother's consistent pattern of behavior establishes that she has not made the Children a priority for the majority of their lives, leaving Stepmother in the role of their mother. The Children, ages thirteen and seventeen at the time of the final hearing, testified that they wanted Stepmother to adopt them and opined that the adoption was in their best interests. Moreover, they expressed concern for their safety if placed in Mother's care. The evidence clearly and convincingly establishes that dispensing with Mother's consent to the adoption was in the best interests of the Children. Accordingly, the trial court did not err when it did just that pursuant to I.C. § 31-19-9-8(a)(11).

[19]   Judgment affirmed.

Najam, J. and Pyle, J., concur.