# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 28 2020, 8:18 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Justin R. Wall
Wall Legal Services
Huntington, Indiana

ATTORNEY FOR APPELLEES

Mark J. Wiley
Bowers, Brewer, Garrett & Wiley, LLP
Huntington, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| J.W.,<br>*Appellant-Respondent,*<br><br>v.<br><br>T.M. and C.M.,<br>*Appellees-Petitioners* | October 28, 2020<br><br>Court of Appeals Case No.<br>20A-AD-1011<br><br>Appeal from the Huntington Circuit Court<br><br>The Honorable Davin G. Smith, Judge<br><br>Trial Court Cause No.<br>35C01-1902-AD-2 |

**Crone, Judge.**

# Case Summary

[1] J.W. (Father) appeals the trial court's determination that his consent was not required as a prerequisite to the adoption of his son, A.W. (Child), by Child's maternal grandparents, T.M. and C.M. (Grandparents). We affirm.

# Facts and Procedural History

[2] Father and S.M. (Mother) are the biological parents of Child. Since his birth in June 2012, Child has resided with Grandparents. Mother and Father never were married, and Mother has resided at Grandparents' home off and on. In 2013, Mother filed a petition for paternity and child support, which the trial court granted, and Father's paternity was established. In 2014, the IV-D Child Support Enforcement Division filed an information for contempt against Father for failure to pay child support. A series of status hearings ensued, with Father repeatedly being ordered to provide proof of filing five job applications per week and/or paying child support. Father's continued noncompliance resulted in more contempt proceedings in 2015, which were continued several times. Around that same time, Father twice sought a custody modification, with the second petition being based on Mother's incarceration. The trial court denied his petitions for custody but granted him supervised parenting time through the Youth Services Bureau. Father had approximately nine supervised visits with Child in late 2015 and early 2016. By June 2016, Father had canceled all visits indefinitely, citing financial problems. In July 2016, the trial court found him to be in contempt for failure to pay child support.

[3] In the summer and fall of 2016, the State charged Father with criminal offenses under three different cause numbers. A jury ultimately found him guilty of three counts of child molesting, two as level 1 felonies and one as a level 4 felony, level 5 felony battery with a deadly weapon, and level 5 felony battery, and also found him to be a habitual offender. The trial court vacated the level 5 felony battery conviction on double jeopardy grounds. The victim of the molestations and batteries was Father's daughter (Child's half-sibling). Father was sentenced to an aggregate, nonsuspendible term of seventy years. His convictions were affirmed on appeal, and his earliest possible release date from the Indiana Department of Correction (DOC) is March 2069.

[4] In September 2017, Grandparents petitioned for guardianship of Child, and Mother consented. Father did not answer or contest the petition, and the trial court granted it. In February 2019, Grandparents filed a petition for adoption by involuntary termination of the parent-child relationship. Mother consented to the adoption. Father appeared in person and by counsel at a December 2019 factfinding hearing. The trial court judicially noticed the paternity, criminal, and guardianship actions. In April 2020, the trial court issued an order with findings of fact and conclusions thereon ruling that Father's consent to adoption was not required and terminating Father's parental relationship with Child. The court simultaneously granted Grandparents' petition for adoption and issued a decree of adoption. Father now appeals. Additional facts will be provided as necessary.

# Discussion and Decision

[5] Father contends that the trial court erred in concluding that his consent to Child's adoption by Grandparents was not required. Recognizing that the trial court is in the best position to judge the facts and assess witness credibility, we give considerable deference to the court's ruling. *J.H. v. J.L. & C.L.*, 973 N.E.2d 1216, 1222 (Ind. Ct. App. 2012). We will not disturb the court's ruling in an adoption proceeding unless the evidence leads to but one conclusion, and the trial court reached the opposite conclusion. *In re Adoption of D.M.*, 82 N.E.3d 354, 358 (Ind. Ct. App. 2017). We will set aside the trial court's findings and judgment only if they are clearly erroneous, which means that there is no evidence to support the findings or the findings fail to support the judgment. *In re Adoption of O.R.*, 16 N.E.3d 965, 973 (Ind. 2014).[1] In conducting our review, we neither reweigh evidence nor reassess witness credibility but rather examine the evidence and reasonable inferences most favorable to the decision and determine whether sufficient probative evidence supports it. *D.M.*, 82 N.E.3d at 358. The trial court's decision is presumed to be correct, and the appellant has the burden of overcoming the presumption. *Id*.

---

[1] Father criticizes the amended findings because the trial court adopted Grandparents' proposed findings verbatim. A trial court's verbatim adoption of a party's proposed findings is not prohibited. *Country Contractors, Inc. v. A Westside Storage of Indianapolis, Inc.*, 4 N.E.3d 677, 694 (Ind. Ct. App. 2014). "Although we by no means encourage the wholesale adoption of a party's proposed findings and conclusions, the critical inquiry is whether such findings, as adopted by the court, are clearly erroneous." *Id*.

When the trial court has heard evidence and finds that the adoption requested is in the child's best interest, and proper consent, if necessary, to the adoption has been given, the court shall grant the petition and enter an adoption decree. Ind. Code § 31-19-11-1(a). If the petition alleges that a parent's consent is unnecessary and the parent files a motion to contest the adoption, the petitioner must prove by clear and convincing evidence that the parent's consent is not required. *Id.* (citing Ind. Code §§ 31-19-10-0.5, 31-19-9-8(a)). Indiana Code Section 31-19-9-8 reads, in relevant part,

> (a) Consent to adoption, which may be required under section 1 of this chapter, is not required from any of the following:
>
> ….
>
> (2) A parent of a child in the custody of another person if for a period of at least one (1) year the parent:
>
> (A) fails without justifiable cause to communicate significantly with the child when able to do so; or
>
> (B) knowingly fails to provide for the care and support of the child when able to do so as required by law or judicial decree.
>
> ….
>
> (11) A parent if:
>
> (A) a petitioner for adoption proves by clear and convincing evidence that the parent is unfit to be a parent; and
>
> (B) the best interests of the child sought to be adopted would be served if the court dispensed with the parent's consent.

Ind. Code § 31-19-9-8.[2]

[7]  To determine what is in the best interests of a child, we must look at the totality of the circumstances. *In re A.W.*, 62 N.E.3d 1267, 1275 (Ind. Ct. App. 2016). A parent's criminal offenses are properly considerable by the trial court in assessing a parent's unfitness as a parent under the statute. *D.M.*, 82 N.E.3d at 360. The trial court concluded that it was in Child's best interests to dispense with Father's consent based on several grounds: Father's failure to significantly communicate with Child, his failure to support Child, and his unfitness to parent based on his criminal history. Because the statute is written in the disjunctive, any one of the grounds listed therein is alone sufficient to dispense with parental consent. *O.R.*, 16 N.E.3d at 973.

[8]  Here, the trial court found that Father's efforts at communication and support had been spotty at best. Communication efforts are particularly important in circumstances such as these, where neither Father nor Mother has ever had primary physical custody of Child. The only constant in Child's life has been Grandparents, with whom he has lived since birth. In 2015, when Father sought and was awarded supervised visitation, he complied for a few months and then canceled visitation indefinitely due to financial concerns. Father has

---

[2] We acknowledge Father's assertion that Grandparents' adoption petition did not specifically allege the statutory basis for their claim that parental consent is not required. However, Father did not raise a due process claim or develop any cogent argument in this regard as required by Indiana Appellate Rule 46(A)(8). Therefore, he has waived the claim for our consideration. *Basic v. Amouri*, 58 N.E.3d 980, 984 (Ind. Ct. App. 2016).

been incarcerated since mid-2016, yet he did not write letters to Child, whose mailing address had not changed for more than six years. His claim that Grandparents thwarted his efforts at communication is an invitation to reweigh evidence and reassess witness credibility, which we may not do. Probative evidence supports the trial court's conclusion that for at least one year, Father failed without justification to communicate with Child through the means available to him.

[9] With respect to child support, the record shows that in 2014, the IV-D Child Support Enforcement Division filed an information against Father due to nonpayment of support. Much of that year and the following year were spent in the following cycle: Father being ordered to fill out at least five job applications and/or pay child support; Father returning to court having not done as ordered; and Father being sent out under the same order only to fail to comply yet again. After he entered the DOC in the summer of 2016, his support payments were intermittent and small. The payments generally went toward other indebtedness, such as bills for paternity testing and DNA bloodwork, and did not inure to Child's benefit. Father's only payment in the final year of the proceedings that did inure to Child's benefit was $65.21 toward his support arrearage. He points out that his support obligation during incarceration had dropped to zero and that his wages in the DOC were miniscule. However, his child support arrearage, $5543.17 as of July 5, 2016, cannot be ignored, as it underscores the fact that he was not paying support as ordered even when he was outside the DOC. Appellant's App. Vol. 2 at 175.

The only sizeable payment throughout the proceedings was a 2016 purge payment of $1500.00 made by Father's ex-wife to satisfy a contempt order. Simply put, Father did not provide for Child when he was under a judicial order or when he had the resources to do so.

[10]    Most significantly, the trial court concluded that Father's criminal history and the nature of his most recent convictions render him an unfit parent. We agree and find his child molesting and battery convictions to be particularly troubling. In his most recent consolidated causes, Father was convicted of five felonies, including two counts of level 1 felony child molesting, one count of level 4 felony child molesting, and level 5 felony battery with a deadly weapon. He committed these offenses against his daughter, Child's half-sister, and is under a no-contact order with respect to her. It is difficult to imagine a more compelling example of unfitness to parent. Moreover, as a practical matter, the length of Father's nonsuspendible sentence must be considered. He is not expected to be released from prison until March 2069, when Child is fifty-six years old. Yet, by contesting the adoption, he now seeks to prevent Child from having the formal, legal, and permanent security of being adopted by the only "parents" he has ever known. To allow him to block the adoption by withholding his consent would be antithetical to Child's best interests.

[11]    In sum, Father has failed at parenting in almost every respect. Whether inside or outside the DOC, he has failed to demonstrate any sustained, earnest attempt at communicating with Child or supporting him financially. His criminal acts against Child's half-sister render him unfit to be around a child, let

alone to parent one, and the length of his sentence makes parenting impracticable if not impossible. Meanwhile, Grandparents have stood in the gap for the entirety of Child's life and wish to officially make him their son. It is in Child's best interests to remove the barrier of parental consent. Based on the foregoing, we find no error in the trial court's conclusion that Father's consent to adoption was not required. Consequently, we affirm.

[12] Affirmed.

Robb, J., and Brown, J., concur.